### SMITH v. CITY of CLEARWATER
No. 75-5356-15
Circuit Court, Pinellas County
March 1, 1978

John T. Allen, Sr., for plaintiff Smith.

Chester B. McMullen, Jr., for defendant Elizabeth M. Massey, and in proper person.

Scott L. Knox, Assistant County Attorney, for defendant Pinellas County Planning Commission.

Francis X. Kowalski, City Attorney, City of Clearwater.

Thomas R. Moore, for defendant City of Clearwater.

DAVID SETH WALKER, Circuit Judge.

After many months of extensive, lengthy and complex pleading and numerous pre-trial motions and hearings, this Cause came on for Final Hearing during the weeks of September 5, 1977, and December 19, 1977. The parties to this Cause, as they existed during the various dates of the Final Hearing, were present before the Court together with their respective attorneys of record. Some seventeen separate, individual witnesses were called to testify by the Plaintiffs and some twenty witnesses were called to testify by the Defendants. Thereafter, the Plaintiffs called six rebuttal witnesses who also testified and were heard by the Court. This Court then heard the final arguments presented by the attorneys for the respective parties and these final arguments were presented with persuasion and eloquence. Thereafter, this Court took this Cause under advisement to enable us to review the numerous ehxibits which were presented by the parties, to consider the authorities of law which were presented by the parties and to review the thirty seven pages of notes taken by this Court during the presentation of the Final Hearing.

Before proceeding further with our findings and opinions herein, we feel it necessary to make mention of an interlocutory order entered by this Court on November 27, 1976, wherein we declared the Pinellas County Planning Council to be unconstitutional. One of the effects of this order was to remove the Pinellas County Planning Council as a party defendant in this Cause. Although the attorney for the Pinellas County Planning Council was present throughout all of the Final Hearing of this Cause, the Pinellas County Planning Council did not take part in the Final Hearing. Subsequent to the Final Hearing in this Cause, and prior to the preparation of this Final Judgment, the Supreme Court of the State of Florida reversed our Order of November 27, 1976, wherein we found the Pinellas County Planning Council to be unconstitutional. However, it is our finding and opinion that the rights,

prerogatives and responsibilities of the Pinellas County Planning Council where adequately represented and preserved by the able expertise of the attorneys for the remaining defendants. Therefore, the Pinellas County Planning Council has been returned to its place and position as a party defendant with respect to the terms of the following order.

This case, as it progressed, evolved into a classic chapter in the ever increasing conflict between the time honored right of property owners to peaceably use and benefit from their property in any manner they so choose, and the right of their neighbors, by and through their duly elected representatives, to restrict such use to the better benefit of the entire community. To better understand and appreciate this confrontation, it is helpful to briefly characterize the parties to this Cause and the land in question, Cooper's Point.

The Plaintiffs constitute a combination of all those persons who have an ownership interest in the peninsula known as Cooper's Point. The ownership of Cooper's Point is divided into three parcels. The northernmost parcel, including the tip of the Cooper's Point peninsula is identified as the Zinsser property. The southernmost parcel, including the area which abuts the Courtney Campbell Causeway, otherwise known as State Road 60, is identified as the Smith property. The middle parcel is identified as the McMullen property. These owners, and their families before them have held title to the Cooper's Point peninsula for many years. Indeed, nowhere is it alleged nor suggested that any of this property was recently acquired by any of the owners for speculative and/or developmental purposes. It is alleged, however, and it has been proven, that these owners did, in comparatively recent times, come together and agree to unify their efforts toward the ultimate development of this property. While the land itself is therefore subject to tripartite ownership, the development plans, efforts and aspirations for the land have been presented as a single unified concept. Here, it is appropriate to note, that one of the owners of the land known as Cooper's Point, is, himself, an attorney at law who has practiced for many years in Pinellas County and whose experience and expertise with regard to real property law is acknowledged.

The primary defendants in this case are the City of Clearwater, a municipal corporation organized and existing under the laws of the State of Florida, and the duly elected and acting Mayor and Commissioners of the City of Clearwater. These defendants are charged by law with the obligation of preserving, promoting and protecting, within the bounds of their discretionary authority, the best interests of all of the community of the City of Clearwater and all of the people residing and working in

that community. The Pinellas County Planning Council is a body duly created and empowered by law to develop and promote an overall plan for the appropriate use of the land areas found within Pinellas County, Florida.

Although technically the subject matter of this suit, the peninsula known as Cooper's Point has achieved, within the eyes of the Court, a status which exceeds this technical description. Including aquatic lands, this peninsula includes in excess of two hundred acres and lies on a northeast-southwest axis along the western shores of upper Tampa Bay, separated from the mainland by a shallow body of water known as Cooper's Bayou. This peninsula lies within the easternmost boundaries of the City of Clearwater, Florida. Except for Clearwater Christian College, a small private school located in the southeastern portion of this peninsula, and except for a network "mosquito ditches" which weave a web-like design upon it, this peninsula has so far escaped the hand of man. Indeed, this peninsula is unique among Pinellas County shoreline properties in that it shows only the design and work of its original Architect. Its low lying aquatic lands contain vegetation which forms the basis of a food chain which is traceable up to man himself. Its uplands constitute a natural homesite for numerous birds, reptiles and mammals which are becoming all too scarce within our environment. Indeed, Cooper's Point is unique because, at least locally, it is now one of a kind. These observations were enhanced by the Court's visit to and view of Cooper's Point.

There is no question but that, since their initial dialogue in the mid-months of 1973, the Plaintiffs have expended large amounts of time, effort and money in the promotion of their particular plans for the unified development of Cooper's Point. The Plaintiffs have, jointly and individually, incurred, among other expenditures, fees for legal representation, fees for architectural assistance and fees for engineering services. These expenditures have been substantial.

In August of 1973, the Plaintiffs retained the services of an architect to assist them in the creation of what the Plaintiffs termed a "unified community development." After several months, the Plaintiffs settled upon a proposed plan which would include in excess of 400,000 square feet of commercial and shopping area with an excess of 3,600 paved parking spaces appurtenant to it, and, in excess of 1,100 apartment dwellings with an excess of 1,700 paved parking spaces appurtenant to them. The Plaintiffs' architect testified that his plan for the development of Cooper's Point contemplated the ultimate residency of some 1,600 persons. It should be noted that when the Plaintiffs' development plans

were first completed and presented to the Defendants, they constituted an allowable use of the Cooper's Point peninsula under the zoning which existed at that time. However, the Plaintiffs' proposed development would also have been subject to the scrutiny and approval of numerous federal and state agencies dealing with the environment, coastal zoning management and rivers and harbor management and preservation. The gauntlet facing the Plaintiffs' developmental plans, with or without the ultimate approval of these Defendants, was arduous.

Upon the presentation by the Plaintiffs of their developmental plans for Cooper's Point to the Defendant, City of Clearwater, together with an offer by the Plaintiffs to deed to the City those areas which the Plaintiffs, unilaterally, deemed to be wetlands, the City responded by requiring that the Plaintiffs obtain from the State of Florida a determination that their proposal did not constitute a "development of regional impact." To the apparent surprise of the Defendants such a negative determination was achieved. Very shortly, before the State of Florida issued its determination that the Plaintiffs' proposals did not constitute a "development of regional impact," the Defendant, City of Clearwater, instituted the re-zoning activities which formed the basis of this law suit.

From the outset the Plaintiffs have complained that the Defendant, City of Clearwater, should be estopped to deny to them the development of the Cooper's Point peninsula to which they aspire. The Plaintiffs complained that the old zoning, Commercial-General, would have allowed the full development of Cooper's Point, in accordance with their plans subject only to the final determination of the aquatic land boundaries. The Plaintiffs also complained that throughout their official negotiations with the Defendant, City of Clearwater, that they were lulled into a sense of security by the words and actions of the agents and employees of the Defendant, City of Clearwater, who seemed to indicate acceptance of their plans subject only to a determination by the State that their plans did not constitute a "development of regional impact." The Plaintiffs complained that as a direct result of the prior zoning of the Cooper's Point peninsula and of the apparent tentative approval by the Defendant, City of Clearwater, of their proposed development; that they, the Plaintiffs, materially changed their position, to their detriment, in reliance thereon. However, at the end of the Plaintiffs' case in chief, this Court granted the Defendant's Motion for Directed Verdict with regard to the Plaintiffs' allegations that the Defendant should be estopped to deny to them the zoning which previously existed upon the Cooper's Point peninsula. In our ruling, which we hereby reconfirm, we found that the optimistic interpretation by the Plaintiffs of what can best be described as bare innuendo voiced by the employees and agents of the

Defendant, City of Clearwater, did not give rise to a circumstance upon which the Plaintiffs could legally rely. We also found and we do again state that the Defendant, City of Clearwater, spoke no word nor committed no overt act or deed upon which the Plaintiffs could have reasonably relied. Further, we found that the lack of discouragement on the part of the Defendant, City of Clearwater, did not equal the active official encouragement upon which the Plaintiffs could have legally relied. Finally, it was the finding of this Court that the Defendant's, City of Clearwater, failure to preliminarily discourage a developer from a project which did not bask in the sunshine of City approval did not constitute, in the Court's mind, an official activity or indicia as could be legally relied upon by the Plaintiffs. In substance, and as was stated before, we find there simply was no hard evidence to substantiate the Plaintiffs' allegations that the Defendant, City of Clearwater, should be estopped. Therefore, and again, the Plaintiffs' complaint for relief under the theory of estoppal, is denied.

Absent the testimony regarding the Plaintiffs' complaint for estoppal, the remainder of the Plaintiffs' witnesses consisted of the Plaintiffs themselves, their architect and members of the real estate, housing and appraisal industries within this general area. The Plaintiffs testified as to the tenure of their ownership of Cooper's Point; their expenditures and efforts with regard to its development and their notice, or lack of notice, with regard to the City's rezoning activities. The Plaintiffs remaining witnesses testified, within their expertise, as to the costs of developing Cooper's Point; the anticipated returns from that development and the best and most advantageous use, economically, to which the land of Cooper's Point could be put.

The Defendants, and their witnesses testified as to the general activities of the Defendant, the City of Clearwater, with regard to rezoning and the notice procedures normally followed by the City; as to the nature of Cooper's Point peninsula itself and as to the vegetation and animal life found on and around Cooper's Point and its importance, and as to the economic viability of the development of the Cooper's Point peninsula, under, and in accordance with, the new zoning and upland definitions which presently exist.

The Plaintiffs' six rebuttal witnesses testified primarily, if not totally, as to their opinion regarding the economic feasibility of the Defendant's suggested developmental alternatives. Their opinions were negative and this leads the Court into its consideration of another of the Plaintiffs' contentions, to wit: that the zoning activities of the Defendants have resulted in the inverse condemnation of their land.

In considering the question of inverse condemnation, the Court must determine whether a landowner has been permanently and totally deprived of the entire beneficial use of his land or whether the landowners have merely been restricted from the particular use which they seek. In this case, the Plaintiffs are not newcomers to Cooper's Point. We are not involved with the recent purchase of land for a particular developmental purpose. The Plaintiffs have owned and controlled Cooper's Point for many years, and there was, throughout this litigation, no indication that the Plaintiffs intended to divest themselves from that ownership. Paradoxically, had the Plaintiffs instituted their developmental plans for Cooper's Point in the past, even in the comparatively recent past, it seems unquestioned that their efforts would have gone unchallenged. However, the circumstances of the past do not transcend into the present.

The Plaintiffs sought to prove, through the testimony of many witnesses, that they had, in fact, been permanently and totally deprived, at least economically, of the use and enjoyment of the land which they have owned for so long a time. However, as the trier of fact, this Court must find that the preponderance of the evidence simply does not support this contention. Undoubtedly, the inability of the Plaintiffs to develop Cooper's Point into a "unified community" of multi-family structures together with commercial and shopping areas will result in the prospective loss, by the Plaintiffs, of a large amount of contemplated income and revenue. However, within the framework of the environmental necessities which exist at the present time, many landowners have been called upon to make such a sacrifice for the greater good of an entire community. We feel that the Defendants have shown, through competent evidence, that an economically beneficial use of the peninsula known as Cooper's Point still exists, even within the rigid limitations of the zoning now present. The uses to which the Plaintiffs may put their land have been diminished and their anticipated revenue from those uses have been greatly lessened but their land is, in fact, still usable and substantial revenues are still obtainable. There is a difference, both logically and legally, between the total taking of land from its owner and the implementation of a reasonable restriction upon its use. Therefore, as the trier of fact, we find that the Plaintiffs' freehold has not been rendered permanently and totally useless to the Plaintiffs and, accordingly, as the trier of law we must deny the Plaintiffs' complaint for inverse condemnation.

The Plaintiffs also urge that the Aquatic Lands District Ordinance as passed by the Defendant, City of·Clearwater, is unconstitutional as it applies to the peninsula known as Cooper's Point. Earlier in this

opinion we have described Cooper's Point as being unique, and indeed unique it is. A major contributing factor in its uniqueness is the natural beauty and necessary sustenance provided by the wetlands and mangroves which surround that peninsula. These wetlands and mangroves are the major contributing difference between the Cooper's Point peninsula and the barren facade of overpopulated concrete filled fingers which stretch into our waterways from the once classically beautiful shoreline of Pinellas County. If Cooper's Point is to be developed even under such a plan as was alternatively presented by the Defendants, the protection and preservation of these wetlands and mangroves would constitute an aesthetic and environmental necessity. The natural beauty of these wetlands and mangroves and their perpetual protection would, in this Court's opinion, constitute a major inducement for those seeking a homesite in an area which resembles Pinellas County as it once was and as it could have been. It is worthy of note that even the admittedly restrictive language of the Aquatic Lands District Ordinance does not totally preclude the use of these lands for some purposes which could be at least minimally economically productive. To be sure, the uses allowed would not generate the income which would or could be realized from the construction of a multi-story, multi-family residential building, however, the fact that the uses of these lands have been restricted, even severely, and not totally taken must control our determination. Accordingly, we must find that the Aquatic Lands District Ordinance as it applies to the Cooper's Point peninsula is, in fact, Constitutional and we believe that the enjoyment and benefit afforded by the presence of these aquatic lands to future generations will justify and substantiate this decision.

Much has been argued and implied by the Plaintiffs in this case regarding the zoning activities of the Defendant, City of Clearwater, and the notice, or alleged lack thereof, given by this Defendant with regard to these zoning activities. It has been alleged that no less than individual, personal notice to each individual landowner of proposed zoning changes is Constitutionally necessary even in instances wherein the proposed zoning changes are city wide in effect. This Court acknowledges the authorities cited by the Plaintiffs from both federal and state court decisions which indicate at least a trend towards the requirement of universal individual notice. However, we must be persuaded by the realities of the circumstances before us and the inherent unreasonable impossibility of providing individual notice to all affected landowners regarding proposed zoning changes which are city wide in scope. As was earlier stated, the primary Defendants in this case, the City of Clearwater, and its duly elected and acting Mayor and Commissioners, are charged by law with the obligation of preserving, promoting and

protecting, within the bounds of their discretionary authority, the best interests of all of the community of that city and all of the people residing and working therein. To impose upon these Defendants requirements and procedures which are prohibitive in terms of man-hours and economic expenditures would, in effect, seriously undermine if not extinguish their ability to fulfill their lawful obligations. We all yearn for the simpler circumstances of yesterday wherein an individual's rights were paramount and the government which governed least governed best. However, today's circumstances are not so simple and the platitudes of yesterday do not suffice. The unparalleled attractiveness of Pinellas County has caused its boundaries to become brim full with those seeking its advantages. In order to provide for the greater good of all its inhabitants, the governing agencies within Pinellas County cannot be hobbled by requirements and procedures which are realistically impossible. Accordingly, this Court will not require the Defendant, City of Clearwater to provide universal individual notice to all landowners affected by a proposed city wide zoning change. And, accordingly, this Court finds the Defendant's, City of Clearwater, notice by publication of proposed city wide Ordinance changes to be Constitutional.

Collateral to the opinion stated immediately above is the Plaintiffs' suggestion that the publication afforded was insufficient in that the publication was contained in a newspaper not generally distributed in the community wherein at least one of the Plaintiffs resides. The Plaintiffs alleged that the Defendants either knew or should have known that all of the Plaintiffs did not reside in the community of the City of Clearwater and that, therefore, the publication of the notice of city wide rezoning in a newspaper which is generally distributed only within the area of Clearwater community was not sufficient. This contention is without merit. While the newspaper used by the Defendant, City of Clearwater, for the publication of the notice of this rezoning does not enjoy the largest distribution within Pinellas County, it is nevertheless to be considered a major publication, which does have general daily distribution throughout the community of the City of Clearwater and its immediate surrounding communities. Publication of notice within a newspaper which enjoys general daily distribution throughout the areas affected by the proposed zoning is certainly sufficient.

The Plaintiffs also allege that the posting of rezoning around the parameters of the land affected, to wit: the Cooper's Point peninsula, was not sufficient. The Plaintiffs particularly suggest that the lack of actual posting of notice of rezoning on the McMullen property, and the Zinsser property, which constitute the middle portion and the northernmost end of the Cooper's Point peninsula constituted a fatal deficiency.

These allegations have no merit for two reasons. First of all, the Plaintiffs had requested that the Defendants refrain from trespassing upon their property and secondly the topographical nature of the Cooper's Point peninsula itself would make such "on site" posting so difficult as to be practically impossible.

Finally, the Plaintiffs contend that the Defendant, City of Clearwater, violated the provisions of its own Ordinances with regard to notice of rezoning, in that the time period between the notice was not sufficient. From the evidence and testimony however, this Court, as the trier of fact, finds that the Defendant, City of Clearwater, was in substantial compliance with the dictates of its notice requirements as contained in its own Ordinances.

Indeed, we recognize that notice to a landowner of any official governmental act which could or would change or restrict the use to which that landowner could put his or her land is required as an element of due process. The purpose of giving such notice is to allow the landowner to appear and to be heard with respect to the proposed changes or restrictions upon the use to which he or she may put their land. This is a fundamental right which must be protected by this or any other Court. However, the circumstances of each case must be considered separately before this or any other Court can determine whether or not the landowner has been deprived of those rights. As was stated before, one of the Plaintiffs-landowners involved in this suit is himself an attorney with acknowledged experience and expertise with regard to the laws of this State involving real property and the uses to which property may be put and allowable legal restrictions upon such usage. From the evidence and testimony, it is clear, and this Court finds as a matter of fact, that the Plaintiffs had actual knowledge of the proposed zoning activities of the Defendant, City of Clearwater, and the Plaintiffs, individually and jointly, appeared before the appropriate boards and agencies of the Defendant, City of Clearwater, and did voice their opinions and objections to the proposed zoning. In other words, notwithstanding a deficiency in the Defendant's notice procedures, if any there be, the Plaintiffs did have actual knowledge of the intentions of the Defendant, City of Clearwater; the Plaintiffs appeared before the City of Clearwater and the Plaintiffs were heard. Therefore, and accordingly, the Plaintiffs' complaints regarding the notice of rezoning afforded by the Defendant, City of Clearwater, must be denied.

The final point raised by the Plaintiffs to which this Court will address itself at some length is the allegation that the zoning activities of the Defendant, City of Clearwater, were capricious, confiscatory and arbitrary.

Understandably, when the Plaintiffs survey the shoreline of Pinellas County and witness the countless man-made monuments of glass, stone and steel which virtually surround us, they may reasonably feel that they too should be allowed to develop their land in a similar fashion and to enjoy the undeniable economic opportunity of such a venture. In these regards, the efforts of the Plaintiffs, their expenditure of time and money and their anticipations are appreciated by this Court. The Plaintiffs have, at all times, proceeded with evidenced professionalism, cooperation and good faith.

Throughout the history of the Pinellas County peninsula, and until comparatively recent times, there has been no meaningful restriction upon the use of its lands and waterways. The undeniable advantages of our Pinellas peninsula have brought countless thousands into its boundaries to live, work and play. Bays and waterways which were once beautifully expansive and teeming with aquatic life have become suburban communities. Our shorelines which once welcomed the brillance of the morning sun and bid farewell to the splendor of its evening departure now are cluttered and obscured. Views which were once free for all to enjoy are now restricted in many areas to a fortunate few.

Our comments are not to be considered nor interpreted as a condemnation of multi-family dwelling units. We recognize their convenience, their desirability and their economic necessity. Our comments are intended as an indication of this Court's concern for the perpetual preservation of that which differentiates Pinellas County from the many land-locked counties within the interior portions of our State. Pinellas County has precious little natural shoreline left. It is our sincere hope that the recent efforts of the governmental agencies within Pinellas County to preserve our remaining shoreline will be neither too little nor too late.

The value of the Plaintiffs land, the Cooper's Point peninsula, is beyond estimate, but its value should not be measured monetarily. It is conceivable and probable that the Plaintiffs will, someday, develop Cooper's Point and that the work of its original Creator will be ultimately altered. We believe that the Plaintiffs can develop the Cooper's Point peninsula in such a manner as to derive economic benefit but yet disturb, as little as possible, the work of its original Artist. Our opinion as to the Plaintiffs' allegations that the zoning activities of the Defendant, City of Clearwater, were capricious, confiscatory and arbitrary must be in the negative. Indeed, the zoning activities of the Defendant, City of Clearwater, with regard to the Cooper's Point peninsula, are, in fact, fairly debatable, and, in our opinion are in the manifest best interest of the entire community of the City of Clearwater and of the whole of Pinellas County.

This Court hereby reconfirms all other rulings made by it during the pendency of the litigation in this cause and at the close of the Plaintiffs' case in chief. Any and all issues not directly and specifically resolved by the terms of this Order are to be deemed as neither overlooked nor ignored. We have purposefully addressed ourselves only to those issues which we feel are meritorious.

It is the sincere and heartfelt hope of this Court that the Plaintiffs will in no wise interpret this Order as an indication of insensitivity to their acknowledged economical loss, but as an expression of our deeper sensitivity to the greater good of the entire community of the City of Clearwater and of Pinellas County as a whole.